IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ERICA GALAN**,

        Plaintiff,                              Civ. No. 6:22-cv-01642-MC

     v.                                         OPINION & ORDER

**PROGRESSIVE UNIVERSAL INSURANCE COMPANY**,

        Defendant.

_____

MCSHANE, Judge:

This matter comes before the Court on a Motion to Remand filed by Plaintiff Erica Galan. Pl's Mo. Remand, ECF No. 6. Because Defendant Progressive Universal Insurance Company has failed to establish that removal was proper, Plaintiff's Motion to Remand (ECF No. 6) is GRANTED.

## LEGAL STANDARD

A defendant who is not a citizen of the forum state may remove from state court to federal court any civil action that could have been originally filed in federal court. 28 U.S.C. § 1441(a), (b)(2); *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89–90 (2005); *Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013). Original jurisdiction exists when either complete diversity exists, or when plaintiff's cause of action arises out of federal law or is otherwise permitted by federal law. 28 U.S.C. §§ 1331, 1332. Complete diversity means each plaintiff is a citizen of a state different from each defendant and the amount in controversy *exceeds* the statutory minimum, currently $75,000. 28 U.S.C. § 1332. A corporation is a citizen of any state in which it

is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). A natural person is a citizen of a state where they are domiciled. 28 U.S.C. § 1332(a)(2); *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 857 (9th Cir. 2001).

If, following removal, the court determines it lacks original jurisdiction, and that the case was therefore improperly removed, it must remand the matter to state court. 28 U.S.C. § 1447(c); *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 8 (1983). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (quoting *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir. 1990)).

## DISCUSSION

As discussed below, Defendant did not sufficiently plead the required elements to establish complete diversity. Additionally, Defendant failed to meet its burden to establish the amount in controversy exceeds $75,000.

### I. Diversity of Citizenship

Defendant's notice of removal is silent as to Plaintiff's state of citizenship.[1] Defendant attempted to retroactively remedy this silence by asserting Plaintiff's residency in its response to the remand motion.[2] The diversity jurisdiction statute, however, focuses not on a person's

---

[1] *See* Notice of Removal 4, ECF No. 1. That Defendant failed to check any box for Plaintiff's citizenship on the Civil Cover Sheet while filling in its own box indicates that at the time of removal, Defendant had no viable information as to Plaintiff's citizenship.

[2] *See* Resp. to Mot. to Remand 2, ECF No. 7 ("Plaintiff resides at 170 NW 30th Street, Redmond, Oregon according to the Oregon Police Traffic Crash Report Driver Exchange for the accident at issue in this litigation. Martin Dec., Ex. 7. The same address is included in the Fire Department report regarding the accident. Martin Dec., Ex 8. Based upon this address, it is more likely than not that Plaintiff is a resident and citizen of Oregon, not Ohio or Wisconsin.")

residency, but on the individual's citizenship. 28 U.S.C. § 1332(a)(2); *Kanter* 265 F.3d at 857 (noting § 1332 "speaks of citizenship, not of residency."). "In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989) (citing *Robertson v. Cease*, 97 U.S. 646, 648–649 (1878)). Domicile refers either to a natural person's permanent home or, alternately, where the individual intends to return after temporarily residing elsewhere. *Kanter,* 265 F.3d at 857 (citing *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir.1986)). Residence concerns only the physical presence of the natural person, but it is void of the "*intention* to make a certain definite place one's permanent [home]." *Weible v. United States*, 244 F.2d 158, 163 (9th Cir. 1957) (emphasis added). Here, Defendant as the removing party had the burden of establishing Plaintiff's citizenship. *Kanter,* 265 F.3d at 857. Defendant's failure to affirmatively allege Plaintiff's citizenship is "fatal" to its assertion of diversity jurisdiction. *Id.* at 858. However, as Defendant could cure this deficiency in an amended notice of removal, the Court turns to the amount in controversy requirement of § 1332.

**II. Amount in Controversy**

When it is not facially evident from the complaint that "the amount in controversy exceeds $75,000, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Nordin v. Standard Fire Ins. Co.,* No. 3:22-CV-00775-HZ, 2022 WL 17076752, at *2 (D. Or. Nov. 18, 2022) (quoting *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 416 (9th Cir. 2018)). "If a district court determines at any time that less than a preponderance of the evidence supports the right of removal, it must remand the action to the state court." *Id*. at *1. (citations omitted). To meet its burden of establishing jurisdiction, a defendant may rely on "facts presented in the

3 – OPINION & ORDER

removal petition as well as any 'summary–judgment–type evidence relevant to the amount in controversy at the time of removal.'" *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997).

Here, Plaintiff seeks $50,000 in economic damages and $15,000 in non–economic damages. Notice of Removal 6–7. Defendant argues the $75,000 amount in controversy is met because "[u]nder any method of calculating the [attorney] fees at issue, the fees are likely to exceed $10,000." Resp. 8–9. Defendant provides three methods to estimate attorney fees: (1) percentage method (2) lodestar method (3) fee awards in similar cases. Resp. 2-7.

The percentage method multiplies the economic damages alleged by a percentage. *Rushing v. Ross Dress for Less, Inc.*, No. 3:21-CV-01308-JR, 2021 WL 5989917, at *3 (D. Or. Dec. 2, 2021), *R. & R. adopted* 2021 WL 5989082 (D. Or. Dec. 17, 2021). The parties disagree on what specific percentage the Court should use under this approach. Plaintiff argues that 12.5% of economic damages is appropriate because the Ninth Circuit affirmed a district court's use of that percentage when estimating the amount of attorney fees in determining the amount in controversy. Pl's Mot. to Remand 4, ECF No. 6. Defendant argues the 12.5 percentage "is not mandatory" and, instead, proposes 20% as a reasonable estimate. Resp. at 3–4.

As noted, the Ninth Circuit has upheld Plaintiff's proposed 12.5% of economic damages as "conservatively estimated." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 701 (9th Cir. 2007). Here, 12.5% of 50,000 in economic damages equals $6,250 in attorney fees, bringing the amount in controversy to $72,500. Using Defendant's suggested 20% approach produces attorney fees of $10,000. While this percentage brings the amount in controversy to exactly $75,000, district courts only have original jurisdiction "where the matter in controversy *exceeds*

the sum or value of $75,000. 28 U.S.C. § 1332(a) (emphasis added). In other words, using either percentage, Defendant fails to meet the required amount in controversy threshold under the percentage method.

The second method is the lodestar method, which multiples the number of hours worked by the hourly rate. *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1006–07 (9th Cir. 2002) (citations omitted). Here, Defendant estimates that Plaintiff's attorney David Rosen will spend 36 hours working on this case. Decl. of CJ Martin in Supp. of Notice of Removal ¶¶ 15-16, ECF No. 2. Using the Oregon State Bar Economic Survey, Defendant anticipates Rosen's hourly rate at $290 per hour. *Id.* at ¶ 16, Ex. 4. After multiplying 36 hours by $290 per hour, Defendant concludes "Plaintiff is more likely than not to seek more than $10,440 in attorney fees if her claim is successful." *Id.* Assuming Defendant's assumptions are correct, the amount in controversy is $75,440.

In response, Plaintiff's new associate, Philip Kirk, submitted a declaration stating he is "the associate attorney assigned to this matter, and will be handling the majority of the workload on this case."  Decl. of Philip Kirk in Supp. of Pl's Mot. to Remand ¶ 2, ECF No. 11. Admitted to the Oregon State Bar in October 2022, Philip Kirk has "zero" years of experience. *Id.* at ¶ 3. Plaintiff argues Philip Kirk will do two-thirds of the work while senior attorney David Rosen will work on a third of the case. Pl.'s Reply in Supp. of Mot. to Remand 10, ECF No. 10. Since the economic survey does not capture data for an attorney in Eastern Oregon with Philip Kirk's experience, the Court concludes a rate of $200 per hour is a reasonable rate for his time.[3] Using Defendant's proposed 36 hours, Philip Kirk's two-thirds of the work would amount to $4,800 while David Rosen's one-third of the work would amount to $3,4800. This results in expected

---

[3] This amount is under the 25th percentile of plaintiff's personal injury attorneys in Eastern Oregon.

5 – OPINION & ORDER

attorney fees of $8,280. Accordingly, the amount in controversy ($73,280) falls below the required threshold using the lodestar method.[4]

As for the third method, similar cases, Defendant failed to provide the court with similar cases. Although there are no identical cases, this Court needs cases that will support an educated speculation. Defendant provides three cases. First, Defendant offers *Hospitality. Mgmt. Inc.*, where Defendant misconstrues Judge You's exclusion of "24.9 hours from the loadstar [sic] calculation" as the rate used by the court to calculate attorney fees. 2020 US Dist. LEXIS 19678, at *8 (February 4, 2020).[5] Instead, Judge You calculated about 100 hours for the attorney fees, which is about three times more than what is expected for this case. *Id.* at *6-9. Similarly, *Wentz,* "awarded fees of $31,895.50 to the Plaintiff on the basis of a fee petition seeking more than 114 hours of work." Decl. of CJ Martin in Supp. of Notice of Removal ¶ 14, Ex. 6. Defendant then raises the *Jewet* case, where "Judge Steffan Alexander awarded a total of 985.6 hours," considerably more hours than Defendant's predictions for this case. *Id.* at ¶ 13, Ex. 5.

The Court agrees with Plaintiff that the above cases appear to resemble this action only because they too involve disputes over insurance coverage. Additionally, Philip Kirk submitted a declaration stating (1) he anticipates conducting only two depositions and (2) most evaluations and investigations were conducted during Plaintiff's earlier bodily injury claim. Kirk Decl. ¶¶ 8-9. Based on this record, and unlike Defendant's allegedly similar cases, "litigation of this matter will not be adversarial or protracted."[6] Kirk Decl. ¶ 10. Defendant has not established, by a

---

[4] As discussed below, Plaintiff's attorneys disagree with Defendant's expected hours. The Court need not resolve that dispute because, even accepting Defendant's estimate, the amount in controversy falls short of $75,000.

[5] *See* Decl. of CJ Martin in Supp. of Notice of Removal, ¶ 12. ("Judge You awarded 24.9 hours for attorneys for preparing for two depositions, a motion for sanctions and a fee petition"). Much of that fee award went to "over 100 hours strategizing about how to structure demands in the hopes of obtaining sanctions, making those demands, preparing a motion for sanctions and preparing for a brief oral argument." Feb. 4, 2020 Order 5. If anything, this case supports Plaintiff's argument that expecting even 36 hours for this action is somewhat bloated.

[6] In fact, at this stage in the case, Plaintiff is willing to waive attorney fees if Defendant is willing to settle. *See* Decl. of David Rosen in Supp. Of Pl.'s Mot. to Remand ¶ 4, ECF No.12. ("During our conferral, I suggested to C.J.

6 – OPINION & ORDER

preponderance of the evidence, that the amount in controversy in this matter exceeds the $75,000 threshold.

## CONCLUSION

Plaintiff's Motion to Remand (ECF No. 6) is GRANTED. This matter is remanded to the Circuit Court of Oregon for the County of Deschutes.

IT IS SO ORDERED.

Dated this 2nd day of February, 2023.

                                                      /s/ Michael McShane
                                                MICHAEL J. MCSHANE
                                                UNITED STATES DISTRICT COURT JUDGE

---

Martin that my office would likely waive its attorney's fees at this stage if Progressive was willing to talk settlement. We have not received a response.")